**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | |
| **TX BLACKHORSE, L.P.** | § | **CASE NO. 10-80760-G3-11** |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**FIRST AMENDED DISCLOSURE STATEMENT OF**
**TX BLACKHORSE L.P.**

Dated: August 19, 2011

Thomas B. Greene, III
2311 Steel Street
Houston, TX 77010
713-882-2312

ATTORNEY FOR DEBTOR

## I.

## INTRODUCTION

TX Blackhorse, L.P. ("the Debtor") provides this its First Amended Disclosure Statement (the "Disclosure Statement") to all of its known Creditors and other Parties-in-interest (hereinafter sometimes collectively referred to as "Creditors") to disclose that information deemed to be material, important and necessary to arrive at a reasonably informed decision by each Creditor exercising the right to vote on the Debtor's First Amended Plan of Reorganization (the "Plan") which has been filed with the United States Bankruptcy Court (the "Court") in the above-styled and numbered Chapter 11 case.  A copy of the Plan is enclosed with this Disclosure Statement and the terms and definitions contained in the Plan are incorporated herein by reference for all purposes.  The Statement of Financial Affairs and Statements of All Liabilities and Assets of the Debtor containing detailed financial information concerning the Debtor are on file with the Clerk of the Court and are available for public inspection by any interested party.

## II

## REPRESENTATIONS

NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF Its ASSETS) ARE AUTHORIZED BY THE DEBTOR, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT.   ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.   ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT WHICH MAY TAKE

SUCH ACTION AS IT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED.  THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SERVICES.  FOR THIS REASON, THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO BE ACCURATE.  THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY THE TERMS AND PROVISIONS OF THE PLAN.  EACH CREDITOR IS URGED TO REVIEW THE PLAN IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS OF THE DEBTOR TO ENABLE SUCH CREDITORS TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

I.

## EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a Debtor attempts to reorganize its business for the benefit of its creditors.  Section 362 thereunder provides for an automatic stay of all attempts to collect from a Debtor claims which arose prior to the commencement of the case or otherwise interfere with the Debtor's property or business. After commencement of a Chapter 11 case, the Debtor may operate as Debtor-in-Possession in accordance with the provisions of Section 1107 and 1108 of the Bankruptcy Code.

Formulation of a plan of reorganization is the primary purpose of a reorganization case under Chapter 11.  The plan sets forth the means for satisfying the holders of claims against, and interests

in, the Debtor.  After the plan has been filed, it must be accepted by holders of certain claims in the Debtor, and Section 1125 of the Bankruptcy Code requires full disclosure before acceptance of the plan may be solicited by any party-in-interest.  This Disclosure Statement is presented to Creditors and interest holders to satisfy the requirements of Section 1125 of the Bankruptcy Code.

IV.

PROCEDURE FOR ALLOWANCE OF CLAIMS AND INTERESTS

The Bankruptcy Court has entered or will enter an Order setting the bar date for filing with the Bankruptcy Court proofs of claim or proofs of interest.  The Plan provides that Claims in all classes shall be allowed only if evidenced by a timely filed proof of claim or application for payment of compensation which is allowed by the Court, or which otherwise appears in the Schedules filed by the Debtor and is not listed as disputed, contingent or unliquidated, unless subsequently allowed and ordered paid by the Court.

V.

VOTING PROCEDURES AND REQUIREMENTS

5.01    Ballots and Voting Deadline

In addition to this Disclosure Statement and a copy of the Plan, each Creditor entitled to vote will hereinafter be provided with a ballot to be used for voting to accept or reject the Plan, together with a postage paid return envelope.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Court regarding its approval of the Plan or at such other time as the Court may set.  The time and date of the hearing will be set forth in a notice to the Creditor.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

Thomas B. Greene, III
2311 Steel Street
Houston, TX 77098

5.02    Creditors Entitled to Vote

Any Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.  Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the creditor.  Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Court.  A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

5.03    Definition of Impairment

Under Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

(a)    leaves  unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

(i)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code;

5

(ii)    reinstates the maturity of such claim or interest as it existed before the default;

(iii)    compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(iv)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or interest.

5.04    <u>Classes Impaired Under the Plan</u>

The following classes of Claims are impaired under the Plan and Creditors holding Claims in such classes are entitled to vote to accept or reject the Plan:

1.    Class 2:  Allowed Secured Claim of Park Cities Bank.

2.    Class 3:  Allowed Secured Claim of CWI Investor Holdings Two, L.L.C.

5.05    <u>Vote Required for Class Acceptance</u>

The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class which actually cast ballots for acceptance or rejection of the plan, <u>i.e.</u>, acceptance takes place only if at least two-thirds in amount and more than one-half in number of the creditors actually voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the allowed interests of such class.

VI.

<u>CONFIRMATION OF THE PLAN</u>

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

6.01    <u>Confirmation Hearing</u>

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  Section 1128(b) provides that

6

any party-in-interest may object to confirmation of the Plan.

The time and date of the Confirmation Hearing will be set forth in a notice to each creditor. The Confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement made at the Confirmation Hearing or any adjournment thereof. Any objection to confirmation must be made in writing and filed with the Bankruptcy Court and served upon the following parties, together with proof of service, on or before the date set by the Court:

> Thomas B. Greene, III
> 2311 Steel Street
> Houston, TX 77098

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

6.02    Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. These requirements are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the case or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after

confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

5.     The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

6.     With respect to each impaired class of claims or interests, either each holder of a claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code.

7.     Each class of claims or interests has either accepted the Plan or is not impaired under the Plan.

8.     Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that administration expenses and priority claims (other than tax claims) will be paid in full on the Effective Date or reach an agreement with Debtor otherwise and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the Effective Date,  equal to the allowed amount of such claim.

9.     At least one class of claims that is impaired under the Plan has accepted the Plan,

determined without including any acceptance of the Plan by any insider holding a claim of such class.

10.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the Plan satisfied all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11 and that the proposal of the Plan is made in good faith.

The Debtor believes that the holders of all claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor was liquidated in a case under Chapter 7 of the Bankruptcy Code.

Debtor has been negotiating with Compass Bank and anticipates Compass Bank will vote in favor of the Plan.

    6.03    <u>Information on Voting and Ballots</u>

Ballots are being forwarded to all Creditors and Interest Holders.  Those Creditors whose Claims are unimpaired under the Plan are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code, and therefore need not vote with regard to the Plan.  Under Section 1126(g) of the Bankruptcy Code, Creditors or Interest holders who do not either receive or retain any property under the Plan are deemed to have rejected the Plan.  In the event a Creditor does not vote, the Bankruptcy Court may deem such Creditor to have accepted the Plan.

Ballots received by Debtor in the following categories shall not be counted as an acceptance or rejection, unless otherwise ordered by the Court:

1.    The claimant or its authorized representative did not use the authorized Ballot form,

9

or a form of Ballot substantially similar to such authorized form;

2.      The Ballot was not received by Debtor on or before the time and date and at the place set forth by the Order;

3.      The claimant or its authorized representative did not check one of the boxes indicating acceptance or rejection of the proposed Plan, or checked both such boxes;

4.      The Ballot was not signed by the claimant or its authorized representative;

5.      The claimant failed to fill in the claim amount, where the Ballot has a claim amount blank to be completed; or

6.      The Person casting the Ballot (whether directly or as a representative) was not a holder of a claim as of the date of entry of the Order Approving Disclosure Statement in Debtor's Chapter 11 case and therefore was not entitled to vote.

6.03    <u>Cramdown</u>

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or interests.  "Fair and equitable" has different meanings for secured and unsecured claims.

With respect to a secured claim, "fair and equitable" means either (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claim with a present value as of the effective date at least equal to the value of such creditor's interest in the property securing its liens, (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (i) or

10

(ii) hereof, or (iii) the impaired secured creditor the "indubitable equivalent" of its claim under the plan.

VII.

### BACKGROUND OF DEBTOR'S OPERATIONS
### AND EVENTS LEADING TO FILING OF CHAPTER 11

Debtor is a single asset real estate developer and owns an undeveloped tract of land consisting of approximately 630 acres in Texas City, Galveston County, Texas.  Debtor's predecessor in interest acquired this land in February 2006 with the express purpose of developing a subdivision, including platting the property, constructing streets and other amenities for the property, providing the property with utilities such as water and sewer service, and ultimately selling the platted lots to home builders on which they would build homes. Debtor acquired the property in July 2009.

Because of the economic downturn beginning in 2008, immediate development of the property was unfeasible.  Debtor went into default in the payment of the note in favor of Park Cities Bank, which has a first lien on the property.  Park Cities Bank posted Debtor's property for foreclosure in January, 2011, which precipitated the filing of this proceeding on December 28, 2010.

VIII.

### COURSE OF PROCEEDINGS IN CHAPTER 11

Debtor has remained in possession of its property and has continued to conduct its business as Debtor-in-Possession. Debtor has had no financial activity during the course of the Chapter 11 proceeding. It has neither generated profits nor paid any debts except the quarterly payments to the Office of the United States Trustee.

IX.

### DESCRIPTION OF ASSETS AND DEBT STRUCTURE

Debtor is a limited partnership whose general partner is CW LT Management, L.L.C.of Tempe, Arizona. The general partner owns 1% of the Debtor. John Cork, also of Tempe, Arizona, owns 88% of the Debtor as limited partner. Mr. Cork is also the manager of the general partner. Emilie Cork and Nathan Cork own 5% limited partner interests respectively.

Debtor's main asset is an undeveloped tract of land of approximately 630 acres located of Interstate 45 in Texas City, Texas. Debtor believes the tract to be worth $15,750,000.00. In addition Debtor has a receivable from a related company of approximately $3,350,000, which is currently uncollectible. It has no other assets.

The following is a summary of Debtor's debts:

1. Secured Claim of Park Cities Bank, in the amount of $10,856,966.37. The entire claim, with accrued interest, is approximately $12,000,000.00. Park Cities has the first lien of Debtor's 630 acres.

2. Secured Claim of CWI Investor Holding Two, L.L.C., scheduled at $2,405,000.00. CWI has a second lien on Debtor's 630 acres.

3. Unsecured claims in the amount of $2,500.00.

4. There are no property tax claims or other priority claims known to Debtor.

X.

## DESCRIPTION OF THE PLAN OF REORGANIZATION

11.01   Introduction

Reference is hereby made to the Plan, a copy of which is enclosed herewith, for details concerning the classification and the treatment of the holders of claims against the Debtor and holders of interests in the Debtor.  Unless otherwise defined herein, all capitalized terms used herein shall have the same meaning as defined in the Plan.  Under the terms of the Plan, all parties with a claim against the Debtor or their property will be placed into certain classes, as described below.

12

11.02   Administrative Claims

Administrative Claims constitute any claims against the Debtor for any cost or expense of the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code.  Professional fees are included under this lease.  Allowed claims shall be paid in full on the Effective Date or paid pursuant to an agreement that may be worked out between Debtor and the claimant.  Payments shall be made from cash on hand.  Debtor estimates these claims to be $15,000.00 or less..

11.03   Treatment of Class 1 Claims

Section 507 of the Bankruptcy Code provides that certain claims receive priority for payment, which may include claims for taxes, alimony and child support, wage claims, contributions to pension plans, and other such claims. The Class 1 Claims consist of the priority claimants including ad valorem tax claims  that are secured by Debtor's real estate. The holder of an Allowed Priority Claim will receive Cash payments for the full amount of its claim from Reorganized Debtor upon the Consummation Date. Debtor does not believe that there are any such claimants.

11.04   Treatment of the Class 2 Claim

 The Class 2 Claim is the Secured Claim of Park Cities Bank  in the principal amount of $10,856,966.37.

Park Cities will retain its first lien on Debtor's Real Estate. Debtor will divide its Real Estate into four roughly equivalent parcels or "Pods." These Pods are illustrated on Exhibit "1" attached hereto. Within one year from the Consummation Date, Debtor will secure the release of Park Cities' lien on Pod 1 and pay to Park Cities in cash one fourth (1/4) of Park Cities Allowed Secured Claim, or $2,714,241.59, plus any accrued interest. Upon the takedown of the Pod 1, Reorganized Debtor shall provide a road to Debtor's Real Estate. As each Pod is taken down, Debtor  will furthermore provide full utilities (water and sewage) to Debtor's Real Estate such that the property can be developed and lots sold to home builders. On or before the second anniversary of the consummation

13

date, Debtor will secure the release of a Pod 2 and pay Park Cities one quarter (1/4) of its Allowed Secured Claim, or $2,714,241.59 plus accrued interest on the outstanding balance at that time. On or before the third anniversary of the consummation date, Debtor will secure the release of a Pod 3 and pay Park Cities one quarter (1/4) of its Allowed Secured Claim, or $2,714,241.59 plus accrued interest on the outstanding balance at that time. Finally, on or before the forth anniversary of the consummation date, Debtor will secure the release of a Pod 4 and pay Park Cities one quarter (1/4) of its Allowed Secured Claim, or $2,714,241.59 plus accrued interest on the outstanding balance at that time.

When Debtor begins making lot sales after the takedown of the first Pod and until the Allowed Secured Claim of Park Cities is paid in full, Debtor will sell the lots for a minimum price on a per acre basis that at least is equal to the per acre allocation of Park Cities' Allowed Secured claim over the property.

The Allowed Secured Claim of Park Cities shall bear interest at the rate of six percent (6%) per annum on the outstanding balance. Debtor shall make a monthly interest payment to Park Cities of three percent (3%) per annum calculated on the outstanding balance beginning 30 days from the Consummation Date and continuing monthly on the same date of each month thereafter until the Allowed Secured Claim of Park Cities is paid in full. In addition, upon the takedown of each Pod as described in the previous paragraph, Debtor will pay the balance between the interest that has accrued at six percent (6%) per annum and the interest that has been paid on a monthly basis.

11.05. <u>Treatment of the Class 3 Claim</u>

CWI will retain its second lien on Debtor's Real Estate. After the Allowed Secured Claim of Park Cities is paid in full, Debtor will pay to the holder of the Allowed Secured Claim of CWI.all of the net proceeds from lot sales from the Debtor's Property as those lots are closed until such time as the Class 3 claim is paid in full.

11.06. <u>Treatment of the Class 4 Claimant(s)</u>

The Allowed Class 4 claimants will be paid in full on the Consummation.

11.07.   <u>Treatment of the Class 5 Interest Holder</u>

The Class 5 is the partnership interests in Debtor.  They will continue to have the ownership interest in the partnership. They will not receive any distribution, however, until all other creditors are paid in full.                                        XI.

## LIQUIDATION ANALYSIS

Debtor believes that the plan provides that the creditors would receive at least what they would receive in a Chapter 7 liquidation. Under a Chapter 7 liquidation, the lien claimants would receive the property in which they have a lien or its value or a trustee would sell the property, usually by auction. Debtor estimates that the real property would lose 40-50% of its value in a Chapter 7 proceeding. The remaining creditors would receive nothing.

XII.

## FEDERAL INCOME TAX CONSEQUENCES

The federal income tax aspects of reorganizations under Chapter 11 are complicated and uncertain at this time, and it is not possible to present in this Disclosure Statement a detailed analysis of the tax consequences of the actions contemplated by the Plan.  Consequently, each creditor and interest holder is urged to consult its own tax advisors with respect to the consequences of the Plan.

In general, the Internal Revenue Code provides that a taxpayer that realizes a "discharge of indebtedness" must include such discharge of indebtedness, i.e., the amount by which the indebtedness discharged exceeds any consideration given for such discharge, in gross income.  The Internal Revenue Code further provides, however, that if a taxpayer is under the jurisdiction of a Bankruptcy Court in a case brought under the Bankruptcy Code and the discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court, such discharge of indebtedness

is not required to be included in gross income.  Accordingly, the Debtor will not be required to include in income any discharge of indebtedness resulting pursuant to the Plan.

Although not included in gross income, any discharge of indebtedness will reduce certain tax attributes of the Debtor, which may include net operating loss carry overs, investment tax credit carry overs, capital loss carry overs, tax basis of assets and foreign tax credit carry overs.

The Bankruptcy Tax Act of 1980 provides that the Debtor's tax attributes will be reduced to the extent of any discharge of indebtedness income in the following order: (i) net operating loss carry overs; (ii) investment tax credit carry overs; (iii) capital loss carry overs; (iv) the tax basis (both depreciable and non-depreciable) of its assets (excluding cash); and (v) foreign tax carry overs. The loss items and the basis of assets are reduced one dollar for each dollar of cancellation of indebtedness income.   The credit items are reduced fifty cents for each dollar of cancellation of indebtedness income.  If the cancellation of indebtedness income exceeds the Debtor's tax attributes, such income is simply disregarded and does not result in taxable income or have other tax consequences.  As a result of the Debtor's reorganization, there will be additional limitations on the Reorganized Debtor's use of its otherwise available tax attributes if the Reorganized Debtor does not continue to carry on substantially the same business as it conducted before the reorganization. There would be a potential adverse effect upon the Reorganized Debtor and its future operations to the extent it realizes discharge of indebtedness income and its Tax Attributes for use in years subsequent to confirmation of the Plan.

XIII.

## MANAGEMENT OF THE REORGANIZED DEBTOR AND PROJECTION OF PAYMENTS UNDER THE PLAN

Debtor will continue to operate as a Limited Partnership. Debtor will be managed, however, by its General Partner, CW Capital Fund One, L.L.C., a management company based in Tempe,

Arizona. The manager shall receive no compensation.

XIV.

PENDING LITIGATION

There is no pending litigation against Debtor.

XV.

EVALUATION OF RISK

As with any Plan of Reorganization, there are certain risks that must be noted in reviewing the Plan. The most significant risk is that there is another significant economic downturn, especially in the local housing market, and the property cannot be liquidated for the prices and in the time frame contemplated.

XVI.

CONSEQUENCES OF REJECTION OF THE PLAN

Debtor believes that rejection of the plan will result in the following:

1.      protracted litigation between various (secured and unsecured) creditors and the Debtor resulting in enormous administrative expense to the detriment of all creditors;

2.      extensive litigation risks for all parties involved;

3.      diminution of the value of the estate to the detriment of all creditors.

XVII.

VOIDABLE TRANSFERS

Debtor has analyzed its prepetition transactions and believes that there are no voidable transfers.

XVIII.

POSTPETITION LIABILITIES OF THE ESTATE

The Debtor have incurred no significant postpetition liabilities in the administration of the estate other than normal administrative expenses.  Such obligations will largely terminate under the Plan. Debtor will continue to pay its post-petition tax liabilities and file all required tax returns. Debtor will continue to file its operating reports and make its required payments to the United States Trustee until the case is closed by the Court.

XIX.

SOURCE OF INFORMATION

Substantially all of the financial information was prepared by Debtor and its in house accountants. Debtor is using cash basis of accounting.

XX.

CONCLUSION

The Debtor believes that its Plan will provide an opportunity for creditors to receive more than those creditors would receive in termination of the Debtor's business affairs and liquidation of its assets by a trustee.  Accordingly, the Debtor urges you to vote in favor of the Plan.

DATED this the 19th day of August, 2011.

Respectfully submitted,

/s/ John Cork

_____

Manager, General Partner
TX Blackhorse, L.P.

APPROVED:

/s/ Thomas B. Greene, III

BY:_____

Thomas B. Greene, III
State Bar No. 08395500
2311 Steel Street
Houston, TX 77098
(713) 882-2312

ATTORNEY FOR DEBTOR